IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRENDA ROXANNE ROLLINS, ) | CASE NO. 3:24-CV-00309-CEH |
| ) | |
| Plaintiff, ) | JUDGE CARMEN E. HENDERSON |
| ) | UNITED STATES MAGISTRATE JUDGE |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| Defendant, ) | |
| ) | |

**I. Introduction**

Plaintiff, Brenda Roxanne Rollins ("Rollins" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 10). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's final decision and DISMISSES Plaintiff's Complaint.

**II. Procedural History**

On December 10, 2021, Claimant filed an application for DIB, alleging a disability onset date of January 1, 2018. (ECF No. 8, PageID #: 45). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id*). On January 19, 2023, an ALJ held a hearing, during which Claimant, appearing *pro se*, and an impartial vocational expert testified. (*Id*.). On March 30, 2023, the ALJ issued a written decision finding Claimant was not disabled. (*Id*. at PageID #: 45-51). The ALJ's decision

became final on September 13, 2023, when the Appeals Council declined further review. (*Id*. at PageID #: 35).

On February 19, 2024, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 13, 14). Claimant asserts the following assignment of error:

> The ALJ failed to satisfy her heightened duty to this unrepresented, chronically homeless, and mentally impaired Plaintiff to (1) "assume a more active role" in the development of the record; (2) "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts"; and (3) be "especially probing" given her cognitive and psychiatric presentation.

(ECF No. 11 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> At the hearing, the claimant testified that she had taken psychiatric medications for approximately twenty years and she had issues with depression and anxiety. Additionally, the claimant testified that she experienced fatigue and tremors. She further testified that she had difficulty sitting, standing, and lifting during the period at issue. Lastly, the undersigned notes that the claimant testified that she lost her health insurance in 2017, and she was not treating due to a lack of insurance.

(ECF No. 8, PageID #: 49).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> The claimant was diagnosed with hypertrophic cardiomyopathy in 2006 and 2007, although it was described as "stable." (Ex. 13F pg. 1; Ex. 16F pgs. 11, 12). Moreover, the undersigned notes that she underwent an echocardiogram in September 2006, which revealed an ejection fraction of sixty-two percent to sixty-five percent, with no aortic insufficiency and only trivial mitral regurgitation. (Ex. 16F pg. 15). . . .
>
> Additionally, on March 3, 2016, the claimant underwent an MRI of her brain,

which demonstrated marked mucosal thickening of the paranasal sinuses, mucosal thickening involving the ethmoid sinuses, and fluid in the left maxillary antrum. (Ex. 16F pg. 9). Despite this finding, the file does not contain evidence of treatment, and she received no treatment for this impairment during the period at issue. . . .

Lastly, the file contains evidence of mental health treatment and the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad areas of mental functioning are known as the "paragraph B" criteria. During the period from the alleged onset date through December 31, 2019, the claimant had: no limitations in understanding, remembering, or applying information, no limitations in interacting with others, no limitations in concentrating, persisting, or maintaining pace, and no limitations in adapting or managing oneself. The undersigned notes that the file appears to show that, in 2016, the claimant was prescribed Adderall, Xanax, and Prozac, for diagnoses that included: attention deficit disorder, anxiety, and depression. (Ex. 17F pg. 4). However, this exhibit only shows a prescription and a listed diagnosis; there are not mental status examinations to support the presence of these conditions as medically determinable impairments. Moreover, in the alternative, if we assume that this single page is sufficient to establish a medically determinable impairment, this note pre-dates the alleged onset date by over one year. There are no exhibits in the file, during the period from the alleged onset date, January 1, 2018, through the date last insured, regarding the claimant's mental health treatment. As such, the undersigned finds that these impairments were not severe prior to December 31, 2019, the date last insured.

(ECF No. 8, PageID #: 49-50).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2018 through her date last insured of December 31, 2019 (20 CFR 404.1572 *et seq.*).

3. From the alleged onset date, through December 31, 2019, the date last insured, the claimant had the following medically determinable impairments: depression; attention deficit disorder (ADD); anxiety; hypertrophic cardiomyopathy; and chronic sinusitis (20 CFR 404.1522 *et seq.*).

3

4. From the alleged onset date through December 31, 2019, the date last insured, the claimant has not had an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1522 *et seq.*).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2018, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(c)).

(ECF No. 8, PageID #: 47-48, 51).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

4

B. **Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

C. **Discussion**

Claimant raises a single issue on appeal:

> The ALJ failed to satisfy her heightened duty to this unrepresented, chronically homeless, and mentally impaired Plaintiff to (1) "assume a more active role" in the development of the record; (2) "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts"; and (3) be "especially probing" given her cognitive and psychiatric presentation.

(ECF No. 11 at 6). Citing *Lashley v. Secretary of Health & Human Services*, 708 F.2d 1048 (6th Cir. 1983), Claimant argues that because she was not represented by counsel at the hearing, the

5

ALJ had a "duty to exercise a heightened level of care and assume a more active role in the proceedings." (*Id.* (internal quotation marks omitted)). Claimant argues that she "was easily confused and struggled to provide a cohesive narrative" at the hearing and the ALJ "acknowledged that there was insufficient evidence to determine whether her mental impairments limited her during the adjudicated period," but the ALJ failed to take further action in violation of "her duty to fully and fairly develop the record for this unrepresented claimant with severe cognitive and psychiatric deficits." (*Id.* at 7-8). Specifically, Claimant argues that "[t]he only plausible options . . . were to order a [consultative examination ("CE")] or recontact her medical source for more information, in this case, Dr. McAden, who wrote that her mental impairments existed prior to 2019." (*Id.* at 8).

The Commissioner responds that the ALJ fulfilled her duty to properly develop the record. In support, the Commissioner argues that "[w]hile some cases have suggested a 'special' or 'heightened' ALJ duty where the claimant is unrepresented at their administrative hearing, [*Moats v. Commissioner of Social Security*, 42 F.4th 558 (6th Cir. 2022)] recently clarified that such a heightened duty is only applicable in 'acute' or 'extreme' circumstances." (ECF No. 13 at 5). Relying on *Moats*, the Commissioner asserts that being an unrepresented claimant does not automatically "heighten" the ALJ's duty and no "acute circumstances" exist here. (*Id.*). The Commissioner argues that "while the ALJ must ensure that every claimant receives 'a full and fair hearing,' the ultimate burden of proving entitlement to benefits lies with the claimant" and Claimant failed to carry her burden. (*Id.* at 6-7). Additionally, the Commissioner argues that Claimant "makes little effort to explain how a one-time consultative examination performed in 2023—with no relevant medical records to review—would be of any utility to the ALJ in assessing whether Plaintiff's mental impairments significantly limited her ability to perform

6

basic work activities back in 2018-2019" nor does she "explain how, given the ALJ's discretion, she clearly erred in not following up with Dr. McAden in 2023, given the evidence already in the record indicating that no treatment occurred (and no treatment notes existed) during the 2018-2019 timeframe." (*Id.* at 7).

Claimant replies that "*Moats* does not even remotely resemble the facts in this case." (ECF No. 14 at 3). Concerning a CE, Claimant asserts that "the need for additional evidence, the unavailability of other evidence, the lack of specialized medical evidence in the record, and/or the general insufficiency of the record are *SSA's own stated reasons*" for ordering a CE. (*Id.* at 4 (citing 20 C.F.R. § 404.1519a(b)(1)-(4))). Because Claimant "was so obviously unable to provide a clear answer regarding her treatment during the adjudicated period," Claimant asserts that "the *only* plausible option that remained to augment the inarguably insufficient record was either to order a CE or schedule testimony by a medical expert." (*Id.* at 5).

The Court finds that *Moats* is instructive here. Relying on *Lashley*, Todd Allen Moats argued in his appeal to the Sixth Circuit that the ALJ had a heightened duty to develop the record because Moats was not represented by counsel at the ALJ hearing. 42 F.4th at 564. The Sixth Circuit rejected his argument, stating that "[t]ime and practice together confirm that *Lashley* is best viewed as an extreme example of an ALJ failing to adequately develop the record before it." *Id.* The Sixth Circuit explained:

> The claimant [in *Lashley*] appeared without counsel. He had only a fifth-grade education. And he "was inarticulate, and appeared to be easily confused." *Lashley*, 708 F.2d at 1050–52. For instance, he explained to the ALJ that, after suffering a series of strokes, he had difficulty gathering his thoughts; he would "know what [he was] trying to say" but would be unable to say it. *Id.* at 1050. The strokes also impaired his memory and his ability to read. *Id.* Despite these obvious limitations, the ALJ questioned Lashley only "[s]uperficial[ly]" and concluded the hearing after a mere 25 minutes. *Id.* at 1052. That combination of extreme impairments coupled with the ALJ's perfunctory review seemingly left an insufficient record to accurately gauge the extent of the claimant's disability. *Id.*

> But absent such acute circumstances, we do not "heighten" the ALJ's fact-finding responsibility, even where a claimant is unsophisticated and appears without counsel. *See, e.g., Born*, 923 F.2d at 1170–72 (finding that, in a case involving a claimant with only an eighth-grade education, the ALJ satisfied the duty to develop the record even without extensive questioning because there were no discrepancies in the record and the claimant "gave no evidence of impaired mental ability").

*Id.* The Sixth Circuit concluded that "Moats's case is not one of extreme circumstances," citing the lack of indication that he did not understand the hearing, his ability to answer questions, and the more than an hour length of his hearing. *Id.*

While Claimant's circumstances here may raise more questions concerning her abilities than were present in *Moats*, her circumstances do not rise to the extreme level present in *Lashley*. Before questioning Claimant, the ALJ explained that Claimant was allowed a postponement to obtain counsel and that such counsel would be paid on a contingency fee basis. (ECF No. 8, PageID #: 61-63). The ALJ provided a detailed explanation of the process and Claimant opted to go forward without representation instead of waiting for a new hearing. (*Id.* at PageID #: 63-69). The hearing lasted over an hour, during which time the ALJ explained that she would need to find that Claimant was disabled prior to December 31, 2019 and there were not any medical records going back to that date. (*Id.* at PageID #: 65). Claimant specifically indicated that she felt there was enough evidence in her file but the ALJ still explained that she could order additional records if Claimant identified what was missing. (*Id.* at PageID #: 69-70). Unlike *Lashley* where the ALJ conducted a superficial, twenty-five-minute hearing, the ALJ here spent significant time questioning Claimant, explaining the process, answering Claimant's questions, and probing to determine whether additional evidence existed. Additionally, while the *Lashley* claimant had only a fifth-grade education, Claimant here has a bachelor's degree and testified that she enjoyed

8

learning. (*Id.* at PageID #: 80). Thus, the extreme circumstances presented in *Lashley* were not present here.

The Court concludes that the ALJ satisfied any heightened duty she had to develop the record. After noting the lack of records concerning the relevant time frame, the ALJ explicitly asked Claimant if she was going to the doctor between 2016 and 2019, to which she replied "No, after 2016 and I could not hold a job, I did not have insurance." (ECF No. 8, PageID #: 76). When Claimant was contacted after the hearing, she indicated that "all medical records are received from Kelsey Seybold Clinic and nothing is outstanding from 2017 – 2019." (*Id.* at PageID #: 414). While Claimant argues the ALJ should have contacted Dr. McAden for more information, the ALJ acknowledged that Dr. McAden's letter indicated that Claimant "had multiple stressors that existed prior to 2019" but explained that the opinion was "dated more than two years after the expiration of the claimant's date last insured, and . . . does not specifically opine that the claimant's inability to work predated December 31, 2019." (*Id.* at PageID #: 50). Thus, based on Claimant's statements that she had not received treatment during the relevant time and that all records were accounted for, the ALJ had no reason to believe that additional records existed or that Dr. McAden could provide additional insight as to Claimant's condition during the relevant time frame.

As to the failure to order a CE, the Court agrees with the Commissioner that a CE would have limited—if any—value. The Sixth Circuit has found that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value. Indeed, post-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date." *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 478 (6th Cir. 2018) (cleaned up). Claimant did not file her application until almost two years after her

9

date last insured and any CE ordered by the ALJ would not have occurred until over three years after her date last insured such that it is unlikely a CE would have provided any insight to Claimant's impairments during the relevant time. As such, the ALJ did not abuse her discretion by failing to order a CE. *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 263 (6th Cir. 2015) ("[W]e have held on several occasions that an ALJ's duty to develop the record did not require the ALJ to order a consultative examination at all.").

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying to Plaintiff disability insurance benefits. Plaintiff's Complaint is DISMISSED.

Dated: July 25, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE
